## In re Rosenthal

*William A. Schnader*, Attorney General, and *Benjamin R. Jones, Jr.*, for Commonwealth.

*James H. Shea*, for respondent.

VALENTINE, J., July 19, 1932.—On petition of the Commonwealth, a rule was granted upon Jacob Rosenthal to show cause why he should not pay to the Commonwealth the sum of $202.86 for the maintenance of his wife, Martha Rosenthal, and why a continuing order for future maintenance should not be made. The petition upon which the rule is based sets forth that Martha Rosenthal, respondent's wife, was admitted to the Retreat Mental Hospital at Retreat, Pa., on June 21, 1929, and since said date has been confined in said institution; that she has been charged upon the books of said hospital as an indigent person against the County of Luzerne and the Commonwealth of Pennsylvania; and that the Commonwealth has expended for her support, since her admission to said institution, the sum of $202.86.

The respondent filed an answer to said petition and averred that, pursuant to the mutual agreement of himself and wife, entered into on December 3, 1925,

he paid her the sum of $3500 "in settlement of all her claims as wife;" that upon the payment of said sum the following agreement was executed:

"Know all men by these presents, that I, Martha Rosenthal, wife of Jacob Rosenthal, of Wilkes-Barre, Luzerne County, Pennsylvania, for and in consideration of the sum of $3500 lawful money of the United States to me in hand paid by Jacob Rosenthal, the receipt whereof is hereby acknowledged, have remised, released and forever discharged and by these presents do remise, release and forever discharge the said Jacob Rosenthal during his lifetime and during my lifetime, of and from all obligations or liability for my support and maintenance as the wife of the said Jacob Rosenthal, in sickness or in health, and I do hereby forever discharge the said Jacob Rosenthal from any claim or demand, in law or otherwise, for said maintenance or support, and do hereby agree to bring no action or proceeding in law or otherwise on account of same.

"In witness whereof, I have hereunto set my hand and seal this third day of December, A. D. 1925.

"MARTHA ROSENTHAL     (Seal)

"State of Pennsylvania, County of Luzerne, ss.:

"On this third day of December, 1925, before me personally came Martha Rosenthal, to me known and known to me to be the individual described in and who executed the foregoing instrument and she acknowledged that she executed the same.

"JESSIE L. SARGENT,
"Notary Public."

The answer further sets forth that since the execution of said agreement the parties have lived separate and apart and that respondent has contributed nothing towards the support of his wife.

The petition was presented under the provisions of section three of the Act of June 1, 1915, P. L. 661, which says:

"The husband, wife, father, mother, child, or children of any person who is an inmate of any asylum, hospital, home, or other institution, maintained in whole or in part by the Commonwealth of Pennsylvania, and who is legally able so to do, shall be liable to pay for the maintenance of any such person, as hereinafter provided."

Under this provision, liability of the husband is not dependent upon the continuance of the family relation: Harnish's Estate, 268 Pa. 128; Com. ex rel. v. Neff, 29 Dist. R. 1010; Steiniger's Estate, 5 D. & C. 472.

The agreement set up by the respondent does not expressly provide for the separation of the parties. The answer avers a separation prior to its execution. To all intents and purposes, the agreement is a release of the respondent from any claim or demand by the wife for future maintenance and support. By its express terms, the wife released and discharged the respondent "from all obligations or liability" for her support.

If a husband and wife part by mutual consent and he secures to her a separate maintenance suitable to his condition and circumstances in life and pays it according to the agreement, he is not answerable for her future support: Com. v. Richards, 131 Pa. 209; Ray's Estate, 304 Pa. 421; nor for necessaries furnished her by a third person: 9 R. C. L. 530, Sec. 349; Eastland v. Burchell et ux., 3 Q. B. D. 432 (1878); and it is immaterial whether separation has taken place prior to the execution of the agreement or is to take place immediately after its execution: 9 R. C. L. 524, Sec. 344.

In the instant case there is no contention that the husband was guilty of bad faith or fraud, or that the terms of the contract were not fair and reasonable.

So far as we have been informed, they are equitable and adequate in view of the conditions of the parties at the time of the execution of the agreement.

In Roth *v.* Rensel, 29 Dist. R. 515, it was held that a husband living separate from his wife by agreement under which he paid a stipulated sum and was released from all claims by reason of marriage was not liable for the funeral expenses of his wife not incurred by his order.

In Alley *v.* Winn, 134 Mass. 77, 81, it is said:

". . . the consent of the husband that the wife shall live apart from him, upon the agreement and condition that she shall support herself, is dependent upon the performance of the condition; . . . failing to perform, she cannot contend, nor can it be contended on her behalf by those who furnished her supplies, that she carries in her absence her husband's credit with her."

Does the claim of the Commonwealth occupy a different position than would the claim of an ordinary creditor who had furnished the wife with necessaries?

Counsel for the Commonwealth have urged that the standing of the Commonwealth is analagous to the standing of a poor district in the case where the mother of an illegitimate child has released the father from liability for its support, but in such case the child, whose support was involved, was under disability to contract and the liability of the poor district for its support existed at the time of the execution of the release. In the present case defendant's wife did not become a public charge until three and one-half years after the execution of the release and the separation of the parties, but when such condition arose the Commonwealth had no alternative but to care for her, if she was not otherwise cared for. The right of choice which a third person furnishing her with necessaries had, to decline such credit, did not exist in favor of the Commonwealth. The respondent continued to occupy the relationship of husband. If entitled to a severance of the marital ties, he might have procured a decree of divorce, but instead of so doing, saw fit to rest on the release executed by his wife. As against the wife the release is effective, so also as against one who voluntarily became her creditor, but we think a different situation exists as against the claim of the Commonwealth, and that respondent is liable for maintaining his wife if he is "legally able" to pay therefor. Upon application, a time will be fixed for the holding of a hearing to determine respondent's financial responsibility.

From Frank P. Slattery, Wilkes-Barre, Pa.